The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COACH, INC., a Maryland Corporation; COACH SERVICES, INC., a Maryland Corporation,<br><br>　　　　　　　　　Plaintiffs,<br>　　vs.<br>PEGASUS THEATER SHOP, an unknown business entity; SHERL STOCKING, an individual; and DOES 1-10, inclusive.<br>　　　　　　　　　Defendants. | CASE NO. 12-CV-01631-MJP<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE DEFENDANTS' LIABILITY FOR TRADEMARK INFRINGEMENT**<br><br>NOTE ON MOTION CALENDAR:<br>July 19, 2013 |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. DEFENDANTS HAVE OFFERED NO EVIDENCE TO SHOW THAT A DISPUTE EXISTS ................................................................... 1

III. THE DISPUTED PRODUCTS ARE COUNTERFEIT ....................... 2

   A. The Disputed Products Bear Marks Identical to or Substantially Indistinguishable from the Coach Marks ....................................... 2

      *1. Defendants Admit the Handbag and Wallet Bear Counterfeit Reproductions of One or More of the Coach Marks* .................................................................................. 2

      *2. The Watch, Coin Purse, and Reading Glasses Bear Counterfeit Reproductions of the Signature C Mark* ............ 3

   B. "Intent" is Not Required to Prove Liability ................................... 5

IV. EVEN IF THE GOODS WERE NOT CONSIDERED "COUNTERFEIT," AN ANALYSIS OF THE *SLEEKRAFT* FACTORS WOULD STILL WARRANT SUMMARY JUDGMENT IN FAVOR OF COACH ............................................... 6

   A. Strength of the Coach Mark Designs ............................................ 6

   B. Relatedness of Goods .................................................................... 7

   C. Similarity of Marks ........................................................................ 9

   D. Evidence of Actual Confusion ....................................................... 9

   E. Marketing Channels Used ............................................................ 10

   F. Degree of Purchaser Care ............................................................ 10

   G. Defendants' Intent in Selecting the Mark ................................... 11

V. CONCLUSION ....................................................................................... 12

i

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT R
LIABILITY

**GORDON & REES LLP**
121 SW Morrison Street, Suite 1575
Portland, OR 97204
Tel.: (503) 222-1075

# TABLE OF AUTHORITIES

## CASES

Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1455 (9th Cir., 1991) ................................... 9

Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1536 (9th Cir.1989) ................................................................................................. 7

Adidas-America, Inc. v. Payless Shoe Source, Inc., 546 F.Supp.2d 1029, 1053 (D.Or. 2008) ........................................................................ 4

adidas-Salomon AG v. Target Corp., 2003 WL 25710435 (D.Or., 2003) .............. 7

adidas-Salomon AG v. Target Corp., 2003 WL 25710435, *7 (D.Or., 2003) ........................................................................................... 10

Baker v. Master Printers Union, 34 F.Supp. 808, 811 (D.N.J.1940) ...................... 4

Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1050 (9th Cir. 1999) ............................................................. 10

Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988) ................................................................................................. 4, 7

Coach, Inc. v. Siskiyou Buckle Co., No. 03:11-CV-486-H, 2012 U.S. Dist. LEXIS 60057 (D. Or. Apr. 27, 2012) ..................................... 11

Designer Skin, LLC v. S & L Vitamins, Inc., 560 F.Supp.2d 811, 818 (D.Ariz.2008) ........................................................................................ 9

Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1405 (9th Cir., 1997) ............................................................................... 8

E. & J. Gallo Winery v. Consorzio del Gallo Nero, 782 F.Supp. 457, 466 (N.D.Cal.1991) ................................................................................. 3

E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d. 1280, 1291 (9th Cir., 1992) ............................................................................................... 6

GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir.2000) .............. 4

GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir.2000) .............. 6

Henri's Food Products Co. v. Kraft Inc., 717 F.2d 352, 359 (9th Cir. 1983) ................................................................................................... 5

K-Swiss, Inc. v. USA AISIQI Soes Inc., 291 F.Supp.2d 1116, 1125 (C.D.Cal., 2003) ................................................................................... 8

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT R LIABILITY

**GORDON & REES LLP**
121 SW Morrison Street, Suite1575
Portland, OR 97204
Tel.: (503) 222-1075

Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir.1980) ................ 4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586 (1986) ........................................................................................................... 2

Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 257–58 (2d Cir., 1987) ..................................................................................................... 8

Nutri/Sys., Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 605-606 (9th Cir.1987) ................................................................................................... 9

Official Airline Guides v. Goss, 6 F.3d 1385 (9th Cir., 1993) ............................... 9

Payless Shoesource, Inc. v. Reebok Intern. Ltd., 998 F.2d 985, 988 (Fed. Cir., 1993) .................................................................................................. 10

Payless Shoesource, Inc. v. Reebok Intern. Ltd., 998 F.2d 985, 989 (Fed.Cir.1993) .......................................................................................... 9

Playmakers, LLC v. ESPN, Inc., 297 F.Supp.2d 1277, 1283 (W.D.Wash.2003), aff'd, 376 F.3d 894 (9th Cir.2004) ....................................... 3

T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 632 (9th Cir.1987) ........................................................................................... 1

Taubman Co. v. Webfeats, 319 F.3d 770, 775 (6th Cir. 2005) .............................. 5

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992) ........................... 6

STATUTES

15 U.S.C. §1114 ................................................................................................. 5, 11

15 U.S.C.A. §1127 ................................................................................................. 2

15 USC § 1117(b) .................................................................................................. 5

Fed.R.Civ.P. 56(c) ................................................................................................. 1

Fed.R.Civ.P. 56(e) ................................................................................................. 1

iii

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT R
LIABILITY

GORDON & REES LLP
121 SW Morrison Street, Suite1575
Portland, OR 97204
Tel.: (503) 222-1075

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants have failed to offer a single piece of evidence that raises any genuine issues of fact regarding their liability for trademark infringement in their Response to Plaintiffs' Motion. There are no genuine issues in this case regarding Coach's ownership and rights to the Coach Marks or that Defendants sold the Disputed Products in question. The fact of the matter is that Defendants purchased and sold products bearing counterfeit reproductions of the Coach Marks.

Defendants' Opposition incorrectly asserts that a showing of "intent" is required to prove trademark infringement under the Lanham Act, and then moves on to a misguided application of the *Sleekraft* factors to arrive at the unsubstantiated position that the Disputed Products do not infringe upon the Coach Marks. The fact remains – a simple comparison of Defendants' Disputed Products and the Coach Marks demonstrates an inescapable likelihood of confusion.

## II. DEFENDANTS HAVE OFFERED NO EVIDENCE TO SHOW THAT A DISPUTE EXISTS

Defendants ("Defendants" or "Pegasus") have failed to offer a single piece of controverting evidence with regards to Plaintiffs' ("Plaintiffs" or "Coach") Motion for Partial Summary Judgment (the "Motion"). As discussed in Plaintiffs' moving papers, summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law. [Fed.R.Civ.P. 56(c)] The party requesting summary judgment has the initial burden to show that there are no genuine issues of material fact. [T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 632 (9th Cir.1987)] If the moving party satisfies his initial burden, the opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists. [Fed.R.Civ.P. 56(e)] The dispute must be genuine. The "opponent must do

1  more than simply show that there is some metaphysical doubt as to the material facts."
2  [Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586 (1986)]
3       There is no dispute that Coach is the registered owner of the Coach Marks at
4  issue.  There is no dispute that Defendants, not Coach, purchased and subsequently
5  sold the Disputed Products at issue in this case.  Whether or not these products are
6  counterfeits/infringing of Coach's products and whether or not summary judgment
7  should be granted is a question for this court, and not the parties' respective employees
8  or attorneys to decide after comparing the Disputed Products to the Coach Marks.
9  Defendants have not produced any specific evidence through admissible discovery
10 materially sufficient to satisfy their burden of showing that a dispute regarding their
11 purchase and sale of the Disputed Products actually exists.

12 **III.   THE DISPUTED PRODUCTS ARE COUNTERFEIT**

13      **A. The Disputed Products Bear Marks Identical to or     Substantially**
14           **Indistinguishable from the Coach Marks**

15      The Lanham Act defines a "counterfeit" as "a spurious mark which is identical
16 to, or substantially indistinguishable from, a registered mark."  [15 U.S.C.A. §1127]
17 Indeed the designs/patterns that appear on the Disputed Products are "counterfeit," and
18 implemented it in the same manner as the Coach Marks appear on genuine Coach
19 merchandise.  As such, likelihood of confusion is presumed. (Motion, pp. 7-8)

20         *1.   Defendants Admit the Handbag and Wallet Bear Counterfeit*
21             *Reproductions of One or More of the Coach Marks*

22      Two of the Disputed Products, the handbag and the wallet, bear
23 identical/substantially indistinguishable reproductions of the Coach Word Mark.
24 (Motion, pp. 2-3, 9-13)  The handbag also bears identical/substantially
25 indistinguishable reproductions of the Heritage Logo, the Coach Stylized Mark, the
26 Coach & Lozenge Design, and the Signature C Mark, and the wallet also bears
27 identical/substantially indistinguishable     reproductions of the Coach Est. 1941 Mark
28

2

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT R
LIABILITY

**GORDON & REES LLP**
121 SW Morrison Street, Suite1575
Portland, OR 97204
Tel.: (503) 222-1075

and the Amended CC & Design Signature C Mark.  (Motion, pp. 2-3, 9-13)  Defendants concede: "SHS concedes that at least one of the designs on the Disputed Products are similar to each of the 'Coach Word Mark,' the 'Coach & Lozenge Design,' the 'Heritage Logo,' the 'Coach Stylized Mark,; and the "Coach Est. 1941 Mark.'" (Opposition, p. 20, see also Opposition page. 11)  .

   Defendants cite Pepe (U.K.) Ltd. v. Ocean View Factory Outlet Corp. (a Puerto Rico District Court Case regarding an ex parte seizure order) to support the notion that a counterfeiting analysis must be done with regards to the totality of circumstances regarding use of the mark in the marketplace.  Defendants then meander to the untenable position that despite the admitted reproductions of the aforesaid marks on the handbag and wallet, counterfeiting cannot be found since "none of the products were advertised in any way as a "Coach" product."  Defendants cite no authority regarding this position, as no such authority exists.  If Defendants' position were the law, any counterfeiter could escape liability simply be refraining from advertising.

    **2.** ***The Watch, Coin Purse, and Reading Glasses Bear Counterfeit Reproductions of the Signature C Mark***

   While Defendants have enumerated slight, insignificant differences between marks on the watch, coin purse, and reading glasses and the Signature "C"  Mark (see Defendants' Response, pp. 8-10), many of which are questionable at best, they are far outweighed by the similarities.  "[W]hat is critical is the overall appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks." [Playmakers, LLC v. ESPN, Inc., 297 F.Supp.2d 1277, 1283 (W.D.Wash.2003), aff'd, 376 F.3d 894 (9th Cir.2004)]  "The proper test for likelihood of confusion is not whether consumers would be confused in a side-by-side comparison of the products, but whether confusion is likely when a consumer, familiar with the one party's mark, is presented with the other party's goods alone." [E. & J. Gallo Winery v. Consorzio del Gallo Nero, 782 F.Supp. 457, 466 (N.D.Cal.1991);

3

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT R
LIABILITY

**GORDON & REES LLP**
121 SW Morrison Street, Suite1575
Portland, OR 97204
Tel.: (503) 222-1075

1  Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir.1980).]  As one court
2  aptly noted, "few would be stupid enough to make exact copies of another's mark or
3  symbol. It has been well said that the most successful form of copying is to employ
4  enough points of similarity to confuse the public with enough points of difference to
5  confuse the courts." [Baker v. Master Printers Union, 34 F.Supp. 808, 811
6  (D.N.J.1940); cited by Adidas-America, Inc. v. Payless Shoe Source, Inc., 546
7  F.Supp.2d 1029, 1053 (D.Or. 2008)]  As such, Defendants' position that "Coach does
8  not allege, nor could they, the Disputed Goods at issue here identical to Coach goods."
9  is entirely irrelevant and misleading.

10      Here, although there may be minor differences between the font and orientations
11 of the double-C's of the Signature C Mark and the designs found on the Disputed
12 Products, "the overall impression created by the marks is essentially the same, [and
13 thus] it is very probable that the marks are confusingly similar." [4 J. Thomas
14 McCarthy, McCarthy on Trademarks and Unfair Competition § 24:22 (4th ed.2007);
15 see also GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir.2000)
16 (finding actionable similarity despite use of different colors in logo); Century 21 Real
17 Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988) (actionable similarity
18 between "Century Investments & Realty" and "Century 21"); ("Payless cannot avoid
19 liability for infringement merely by adding (or subtracting) an identical, parallel stripe
20 to adidas' Three–Stripe Mark.")]

21      Defendants also posit that the marks on the watch cannot be construed as
22 counterfeit, since the face thereof displays the name "Ian Daniels" as a purported
23 identification of source.  As a prefatory matter, there is no showing on the record that
24 the watch is an "Ian Daniels" watch, thereby making said mark and identification of
25 source.  Moreover, Defendants' argument that "identification of source prevents a
26 finding of counterfeiting" is incorrect and misleading.  The case Defendants rely on for
27 such assertion, Associated Gen. Contrs. of Am. v. Stokes, describes a scenario

4

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT R
LIABILITY

**GORDON & REES LLP**
121 SW Morrison Street, Suite1575
Portland, OR 97204
Tel.: (503) 222-1075

wherein an *advertisement* bearing a disputably counterfeit mark also contains a conspicuous identification of source. Here, the *actual product itself* contains the alleged "identification of source." Thus, the present facts are inapposite to Stokes.

### B. "Intent" is Not Required to Prove Liability

Coach's Motion is for summary judgment re trademark infringement. A trademark infringement plaintiff must prove: 1) a valid, protectible trademark, and 2) defendant subsequently and without authorization used a similar mark likely to cause consumer confusion. (Motion, p. 6) Likelihood of confusion is *presumed* when the marks at issue are counterfeit - spurious marks that are identical to or substantially indistinguishable from the marks at issue. (Motion, pp. 7-8)

Defendants miss the boat by arguing that in order to prove liability, Coach must prove "intent." The case law cited by Defendants relates to the "intent" requirement to prove treble damages under 15 USC § 1117(b) for an intentional violation of 15 USC § 1114(1)(a). Whether or not Coach is entitled to a trebling of damages is not before the court with the present Motion.

As discussed below, "intent" is one of the eight factors relevant to a showing of likelihood of confusion. However, a plaintiff need not prove "intent" in order to succeed on trademark infringement claim. [Ignorance is no defense to violations of the Lanham Act. 15 U.S.C. §1114; Phillip Morris, 352 F.Supp. 2d at 1073] Indeed, "sellers bear strict liability for violations of the Lanham Act". Henri's Food Products Co. v. Kraft Inc., 717 F.2d 352, 359 (9th Cir. 1983)] "Notably, as in the copyright realm, intentional infringement may lead to enhanced statutory damages, but is not required to prove defendant's liability." Taubman Co. v. Webfeats, 319 F.3d 770, 775 (6th Cir. 2005)]

5

**IV. EVEN IF THE GOODS WERE NOT CONSIDERED "COUNTERFEIT," AN ANALYSIS OF THE *SLEEKRAFT* FACTORS WOULD STILL WARRANT SUMMARY JUDGMENT IN FAVOR OF COACH**

At the very least, the Disputed Products bear marks confusingly similar to the Coach Marks. Defendants have offered no material facts to dispute this.

**A. Strength of the Coach Mark Designs**

The strength of a trademark is evaluated "in terms of its conceptual strength and commercial strength." [GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir.2000)] Defendants fail to address the conceptual strength of the Coach Marks. Defendants put forth no facts disputing the commercial strength of the Coach Marks, but state that the moving papers fail to demonstrate "strength" since the Declaration of Ethan Lau discusses the commercial strength Coach Marks at issue as a whole, rather than addressing each mark individually.

With respect to conceptual strength, marks are generally classified by their placement on a continuum of increasing distinctiveness: generic, descriptive, suggestive, and fanciful or arbitrary. [E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d. 1280,1291 (9th Cir., 1992)] Suggestive, fanciful, and arbitrary marks are deemed inherently distinctive and entitled to the most protection because their intrinsic nature serves to identify a particular source of a product. [Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)] In contrast, "generic" marks-or, names that refer to an entire class of products-are the weakest and receive no trademark protection. [Id.] A "descriptive" ( e.g., one that describes the quality or features of a product) mark may be entitled to protection only if it has acquired distinctiveness through secondary meaning. [Two Pesos, 505 U.S. at 769] Marks such as "letters, numbers, product and container shapes, and designs and pictures may also be classified as 'fanciful.'" [1 McCarthy, Trademarks and Unfair Competition at § 11:10] The Coach Marks are composites and combinations of the word "Coach," juxtaposed "C's," a horse and

6

buggy, and other incidental design elements and verbiage such as borders, shapes, and dates. The Coach Marks are at the very least arbitrary because they neither define, describe, nor suggest the products on which it appears. [See e.g. adidas-Salomon AG v. Target Corp., 2003 WL 25710435 (D.Or., 2003) (where Adidas three-stripe mark was found to be arbitrary because three stripes do not define, describe, or suggest the various products that bear them)]

With respect to commercial strength, "A mark's commercial strength refers to its degree of recognition in the minds of the relevant consumer class, most often measured by the amount of advertising." [Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1536 (9th Cir.1989); see e.g. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988) (evidence of strength of mark includes expenditure of several million dollars in advertising services connected with the mark, and that the mark had been used in connection with sales of more than $1 billion)] Plaintiffs' moving papers sets forth the length of time in which the marks have been used;[1] (2) the billions of annual sales made in connection with the Coach Marks; (3) the $100+ millions spent on advertising/promoting the Coach Marks; and (4) prevalence in the marketplace and in the fashion industry. (Lau Decl., ¶¶ 15-16)

### B. Relatedness of Goods

The relatedness of goods is measured by whether the products at issue are: (1) complementary; (2) sold to the same class of purchasers; and (3) similar in use and function. [Sleekraft, 599 F.2d at 350] Defendants offer no evidence to contradict the

---

[1] Coach has used the Coach Word mark in association with the sale of goods since as early as 1963 (Lau Decl., ¶ 7, Ex. 1); the Signature C Mark since as early as 2002 (Lau Decl., ¶ 8, Ex. 2); the Amended CC & Design Signature C mark as early as 2005 (Lau Decl., ¶ 9, Ex. 3); the Coach & Lozenge Design mark as early as 1997 (Lau Decl., ¶ 10, Ex. 4); the "Heritage Logo" as early as 2008 (Lau Decl., ¶ 11, Ex. 5); the Coach Stylized as early as 2007 (Lau Decl., ¶ 12, Ex. 6); the Coach Est. 1941 mark as early as 2007. (Lau Decl., ¶ 13, Ex. 7)

7

fact that the Disputed purse, wallet, watch, coin purse, and glasses are complementary and similar in use to goods offered by Coach, since Coach also sells handbags, wallets, watches, purses and eyewear.  (Lau Decl., ¶¶ 4, 20)  Rather, Defendants attempt to differentiate the business operations of the parties (which is irrelevant to the present factor), baldly assert that "there is a question as to whether Coach and Defendants appeal to the same class of customer," and then direct the Court's attention to the discussion of the "Degree of Consumer Care" factor.

Defendants' obscured argument seems to be that the goods are not related due to the difference in price range between Defendants' products and Coach's products. However, it is entirely possible for a purchaser to believe that they are purchasing authentic Coach product where it is very common these days to purchase off-price, overstock, or gray market luxury branded items at a lower price point from discount stores and outlets.  [K-Swiss, Inc. v. USA AISIQI Soes Inc., 291 F.Supp.2d 1116, 1125 (C.D.Cal., 2003) (Notwithstanding defendant's claim that the dissimilar price range is likely to make purchasers aware that the origin of the shoes is not K–Swiss, purchasers may assume that defendant's shoes are low-end lines produced by K–Swiss)]

Not only is point of sale confusion actionable under the Lanham Act, both initial interest confusion and post-sale confusion are forms of confusion protectable under the Lanham Act.  "Initial interest confusion" occurs when a defendant's use of confusing trademark initially attracts the consumer to the defendant, and this confusion may still be an infringement even if no sale is consummated as a result of the confusion. [See e.g. Brookfield, 174 F.3d 1036, 1062–63; Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1405 (9th Cir., 1997); Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 257–58 (2d Cir., 1987)]  "Initial interest confusion" has been likened to a "bait and switch" scheme, in that "potential customers are lured away from a trademark holder's product to a competitor's product through the deceptive use of the holder's mark."       [Designer Skin, LLC v. S & L Vitamins,

8

1  Inc., 560 F.Supp.2d 811, 818 (D.Ariz.2008)]

2  What is even more damaging to the Coach brand is the risk of post-sale confusion, which occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product. [Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1455 (9th Cir., 1991)]  "[S]uch confusion occurs, for example, when a consumer observes someone wearing a pair of Payless accused shoes and believes that the shoes are Reebok's. As a consequence, the consumer may attribute any perceived inferior quality of Payless shoes to Reebok, thus damaging Reebok's reputation and image." [Payless Shoesource, Inc. v. Reebok Intern. Ltd., 998 F.2d 985, 989 (Fed.Cir.1993)] The likelihood of post-sale confusion is great here where the Disputed Products look nearly identical to authentic Coach products (Motion, pp. 9-16)

**C. Similarity of Marks**

"Similarity of the marks is tested on three levels: sight, sound, and meaning." [Sleekcraft, 599 F.2d at 351 (citation omitted)]  "Each must be considered as they are encountered in the marketplace." [Id.; Nutri/Sys., Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 605-606 (9th Cir.1987); Official Airline Guides v. Goss, 6 F.3d 1385 (9th Cir., 1993)]  A side-by-side comparison of Coach's products and Defendant's Infringing Products makes it clear that this factor weighs in favor of Plaintiffs. (Motion, pp. 9-16) Defendants admit as such: "SHS concedes that at least one of the designs on the Disputed Products are similar to each of the 'Coach Word Mark,' the 'Coach & Lozenge Design,' the 'Heritage Logo,' the 'Coach Stylized Mark,; and the "Coach Est. 1941 Mark.'" (Opposition, p. 20, see also Opposition page. 11)

**D. Evidence of Actual Confusion**

"The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove;  difficulties in gathering evidence of actual confusion make its        absence generally unnoteworthy."

9

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT R
LIABILITY

**GORDON & REES LLP**
121 SW Morrison Street, Suite 1575
Portland, OR 97204
Tel.: (503) 222-1075

[Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1050 (9th Cir. 1999)]  Moreover, Plaintiffs need not prove actual confusion in order to prevail on a motion for summary judgment in a counterfeiting case. [Polo Fashions, Inc., 592 F. Supp. at 651]

### E. Marketing Channels Used

"Similarity of trade channels does not require sales of both parties' goods by identical vendors, but only by the *same type of distribution channels*." [E. & J. Gallo Winery, 905 F. Supp. at 1413]  Defendants purport that the marketing channels of the parties are "wholly dissimilar" through unfounded, anecdotal claims that the "look and feel" of Coach retail stores differs from Defendants' business.  Not surprisingly, Defendants fail to cite any authority regarding this novel "look and feel of retail centers" test.  It is undisputed that both Coach and Defendants sell accessories, such as handbags, wallets, watches, purses, and eyewear through retail channels. (Lau Decl., ¶ 4, Declaration of Michael Marchand in Support of MSJ, Ex. 1, Inter. Resp. #1-2; Ex. 3 (Stocking Dep. Tr. at 8:5 - 9:5

Defendants also concede that like Coach, they sell a small amount of goods "wholesale," (Opposition, p. 19) and then attempt to differentiate the parties by stating that Defendants only sell "merchandise" wholesale, and presuming that their "wholesale" operations are smaller than that of Coach.  However, the fact remains that both parties distribute goods via wholesale.

In any event, factors such as channels of trade and sophistication of consumers, while relevant to point of sale confusion, are not relevant to post-sale confusion. [adidas-Salomon AG v. Target Corp., 2003 WL 25710435, *7 (D.Or., 2003); citing to Payless Shoesource, Inc. v. Reebok Intern. Ltd., 998 F.2d 985, 988 (Fed. Cir., 1993)]

### F. Degree of Purchaser Care

10

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT R LIABILITY

**GORDON & REES LLP**
121 SW Morrison Street, Suite1575
Portland, OR 97204
Tel.: (503) 222-1075

Defendants incorrectly argue that the degree of purchaser care is high because Coach products are "expensive." However, the focus is on the consumer purchasing the *infringing product*, rather than the authentic product. [Coach, Inc. v. Siskiyou Buckle Co., No. 03:11-CV-486-H, 2012 U.S. Dist. LEXIS 60057 (D. Or. Apr. 27, 2012) at 11] The Disputed products were priced at $79.95, $29.95, $10.95, $9.95, and $9.95. (Marchand Decl., Ex. 1, Inter. Resp. # 2, 3) These price-points are paltry compared to what courts typically define as "expensive,[2]" thereby suggesting a low degree of consumer care.

Defendants' argument that "fashion conscious" customers are likely to exercise a high degree of purchaser care does not hold water. The string-cite of cases identified by Defendants (none of which are Ninth Circuit law) apply to designer *clothing* such as raincoats and jeans) rather than accessories, as is the instant case.

### G. Defendants' Intent in Selecting the Mark

Defendants contention that they did not "select any of the Disputed Products with the intent to confuse or deceive prospective customers" is unnoteworthy. As previously mentioned, ignorance is no defense to violations of the Lanham Act, and sellers bear strict liability for violations thereof. [15 U.S.C. §1114; Phillip Morris, 352 F.Supp. 2d at 1073] Henri's Food Products Co. 717 F.2d at 359]

The intent factor generally carries minimal weight because " 'an intent to confuse customers is not required for a finding of trademark infringement.' " [GoTo.com, 202 F.3d at 1208] On the other hand, " 'intent to deceive is strong evidence of a likelihood of confusion' " because, " '[w]hen the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the

---

[2] examples of items that have been classified as "expensive goods" in which a greater degree of care is exercised are: upscale homes, expensive vehicles, race cars, air conditioning units, pleasure boats, and expensive pianos" [4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:97 (2011)

11

1 defendant can accomplish his purpose: that is, that the public will be deceived.' "
2 [Entrepreneur Media, 279 F.3d at 1148]
3     In any event, the record indicates that Stocking was on notice that the handbag
4 and wallet bore the "Coach" word mark, assumed such products were "authentic," and
5 sold same because he thought they would "subsequently resell."  (Marchand Decl., Ex.
6 3 at 15:21- 17:15) Stocking has made no showing that he did anything to verify his
7 assumption that the aforesaid Disputed Products were "authentic."

8 **V.**    **CONCLUSION**

9     Based on the foregoing, Plaintiffs Coach, Inc. and Coach Services, Inc.
10 respectfully request that this Court grant summary judgment in favor of Plaintiffs
11 against Defendants Pegasus Theater Shop and Sherl Stocking on the issue of liability
12 for trademark infringement.  Plaintiff further requests that this Court issue a permanent
13 injunction pursuant to 15 U.S.C. § 1116.

14

15   DATED:     July 19, 2013         BLAKELY LAW GROUP

16

17                             By:   /s/ Michael Marchand _____
18                                 Brent H. Blakely
                                Michael Marchand
19                                 ***Attorneys for Plaintiff Coach, Inc.***

20

21

22

23

24

25

26

27
28

PLAINTIFFS' REPLY BRIEF IN SUPPORT OF         **GORDON & REES LLP**
MOTION FOR PARTIAL SUMMARY JUDGMENT R   121 SW Morrison Street, Suite1575
LIABILITY                                                                       Portland, OR 97204
                                                                                               Tel.: (503) 222-1075