The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COACH, INC., a Maryland Corporation; COACH SERVICES, INC., a Maryland Corporation,<br><br>     Plaintiffs,<br>  vs.<br>PEGASUS THEATER SHOP, an unknown business entity; SHERL STOCKING, an individual; and DOES 1-10, inclusive.<br>     Defendants. | CASE NO. 12-CV-01631-MJP<br><br>**[PROPOSED] PRETRIAL ORDER** |

  Jurisdiction is vested in this court with respect to Plaintiffs' claims for federal trademark and trade dress infringement and trademark dilution by virtue of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This court has jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367, since those claims are related to and arise from the same set of facts as Plaintiff's Lanham Act claims.

## CLAIMS AND DEFENSES

  Plaintiffs will pursue at trial the following claims:

    1. Federal Trademark Infringement (15 U.S.C. § 1114);

2. Trade Dress Infringement (15 U.S.C. § 1125(a));

3. False Designation of Origin and False Descriptions;

4. Trademark Dilution (15 U.S.C. § 1125(c));

5. Unfair Business Practices (RCW § 19.86 et seq.,) and

6. Unfair Competition under Washington Common Law.

Defendants will assert the affirmative defense that they acted in good faith and with innocent intent.

## ADMITTED FACTS

### Coach And Its Family of Trademarks

1. Coach was founded more than seventy years ago as a family-run workshop in a Manhattan loft. Since that time, Coach has been engaged in the manufacture, marketing, and sale of fine leather and mixed material products including handbags, wallets, travel cases, briefcases, planners and diaries, leather goods, watches, eyewear, footwear, apparel, and accessories.

2. Coach Services, Inc., Coach, Inc.'s wholly owned subsidiary (hereinafter collectively "Coach"), is the worldwide owner of the trademark "COACH" and various composite trademarks and assorted design components (collectively referred to herein as the "Coach Marks").

3. The Coach Marks include the Coach Word Mark, the Signature C Mark, the Amended CC & Design Signature C Mark, the Coach & Lozenge Design, the Heritage Logo, the Coach Stylized Mark, the Coach Est. 1941 Mark, and the Coach & Tag Design.

/ / /

/ / /

/ / /

| Mark Name | Image |
|---|---|
| Coach Word Mark | COACH |
| Signature C Mark | |
| Amended CC & Design Signature C Mark | |
| Coach & Lozenge Design | |
| Heritage Logo | |
| Coach Stylized Mark | |
| Coach Est. 1941 Mark | |
| Coach & Tag Design | |

4. Coach has used the Coach Word Mark in association with the sale of goods since as early as 1963. The Coach Word Mark was first registered with the United States Patent and Trademark Office in 1977. The Coach Word Mark is registered for various goods, including handbags, luggage, key fobs, tote bags, and clutches.

5. Coach has used the Signature C Mark in association with the sale of goods in its "Signature" line of goods since as early as 2002. The Signature C was first

registered at the U.S. Patent and Trademark Office in 2002.  The Signature C is registered for various goods, including handbags, briefcases, luggage, wallets, key cases, and fabric for use in the manufacture of clothing, shoes, handbags and luggage.

6. The Amended CC & Design Signature C mark was first registered in 2005; it is used for *inter alia* handbags, purses, fabrics and clothing.

7. The "Heritage Logo" mark was first registered in 2008; it is used for *inter alia* handbags, leather cases, purses, and wallets.

8. The Coach Stylized mark was first registered in 2007; it is used for *inter alia* luggage, backpacks and shoulder bags.

9. The Coach Est. 1941 mark was first registered in 2007; it is used for *inter alia* handbags, small leather goods, jackets and coats.

10. Coach has long been manufacturing and selling in interstate commerce products under the aforesaid Coach Marks.

**Defendant's Conduct**

11. Defendants operate a retail store known as Pegasus Theater Shop. The store primarily sells nostalgic merchandise, such as old tin signs, soda machines and gas pumps, but also sells women's accessories including, but not limited, to handbags, wallets, watches, eyewear, and clothing.

12. Defendants typically purchase accessories at the ASD Show, an annual retail merchandise show in Las Vegas which is open to the public. On occasion, Defendants also acquires items secondhand from individuals who bring such accessories into the Pegasus store wishing to sell them.  The goods at issue in this lawsuit, purchased by Coach's investigator, were acquired in both of these ways.

13. Two of the items at issue in this lawsuit—the handbag (with cover) and the wallet—were acquired by Defendants secondhand.  With respect to these items, an employee present in the Pegasus store on the day the seller came in took pictures of the items and sent them by phone to Mr. Stocking, who was not present in

the store at the time. Mr. Stocking reviewed the pictures, told his employee how much Pegasus would be willing to pay for the items, and the employee then completed the transaction with the seller. When reviewing the pictures of the items being offered by the seller, Mr. Stocking did not notice that they said "Coach" on them. Specifically with regard to the handbag cover, Mr. Stocking didn't see the cover at all in the pictures sent by the Pegasus employee, as it was only discovered later that it was stuffed inside the handbag. Subsequent to the purchase of the items by the Pegasus employee, it was brought to Mr. Stocking's attention that the items did have the word "Coach" on them.

14. The remaining three items at issue—the coin purse, the watch, and the reading glasses—were acquired at the ASD Show. The purse and the watch were acquired as part of a larger assortment of items. The reading glasses were acquired from a separate vendor at the ASD Show, and they were also part of an assortment of glasses with various designs. None of the items acquired by SHS at the ASD Show bear the word "Coach" on them.

15. SHS did not attach labels on the items, or place signs around the items, representing that the items at issue were Coach items.

16. SHS does not engage in any internet-based advertising, and with the exception of a few general ads in newspapers over the years, does not engage in any regular advertising, relying on walk-in traffic.

17. While SHS does maintain a website offering general information about the Pegasus store, such as pictures of the store, contact information, and directions, the website does not offer any items for sale, and no sales are conducted via the website.

18. None of the Disputed Products appeared on the Pegasus website.

19. On February 23, 2012 private investigator Donald Bambenek, contacted by Coach the day before, entered into Pegasus Theater Shops, located 1003

1  at 1st Street, Snohomish, Washington 98290, to conduct an undercover buy of products
2  he believed bore counterfeit reproductions of the Coach Marks.

3        20.    Upon entering the store Mr. Bambenek observed the following
4  items that he believed bore counterfeit reproductions of one or more of the Coach
5  Marks:  three wallets (priced from $29.99 to $49.99), three handbags (priced at $99.99
6  but on sale for $79.00), four additional handbags, seven additional wallets, four purses,
7  three cell phone holders, and three watches.

8        21.    Mr. Bambenek purchased the following items from Pegasus
9  Theater Shops: one handbag ($79.95), one wallet ($29.95), one watch ($9.95), one cell
10 phone holder ($10.95), one pair of reading glasses ($9.95).  Mr. Bambanek forwarded
11 these purchased items to Coach's in-house counsel, Ethan Lau.  Mr. Lau inspected the
12 items that Mr. Bambenek purchased and determined that the items were not genuine
13 Coach goods.

14       22.    Defendants are not, nor have ever been a licensed retailer of
15 authentic Coach products.

16       23.    Defendant Sherl Stocking is the COO and majority owner of
17 Defendant Pegasus Theater Shops. Mr. Stocking is solely responsible for the purchase
18 of products for subsequent retail sale, including the products at issue in this case.

19       24.    Defendant Sherl Stocking has been aware of the Coach brand
20 generally for approximately six-to-eight years.

21       25.    While Defendant Sherl Stocking was not aware at the time of
22 acquisition that the handbag and wallet that were subsequently sold to Mr. Bambenek
23 displayed the word mark "Coach," Mr. Stocking became aware of such facts after
24 those items were in Defendants' inventory when an employee pointed it out to him.
25 / / /
26 / / /
27 / / /
28

## LAW

The following are the issues of law to be determined by the court:

1. Whether or not Coach owns valid trademarks with respect to Coach Marks.
2. Whether the Disputed Products offered for sale by Defendants bear marks that are confusingly similar/substantially indistinguishable from the Coach Marks
    a. Whether the Disputed Products bear marks that are "counterfeit" within the meaning of 15 U.S.C. § 1127.
3. In the event that Defendants are found liable under 15 U.S.C. § 1114, the proper amount of damages awardable to Plaintiffs under 15 U.S.C. § 1117.
4. Whether Coach owns a valid, protectable trade dress to the "CC Design."
5. Whether the Disputed Products offered for sale by Defendants bear marks confusingly similar to the CC Design.
6. In the event that Defendants are found liable under 15 U.S.C. § 1125(a), the proper amount of damages awardable to Plaintiffs under 15 U.S.C. § 1117.
7. Whether Plaintiffs Coach Marks are "famous" within the meaning of the Lanham Act.
8. Whether Defendants' conduct in offering for sale and selling the Disputed Products harmed Plaintiffs' goodwill and reputation associated with the Coach Marks.
9. In the event that Defendants are found liable under 15 U.S.C. § 1125(c), the proper amount of damages awardable to Plaintiffs under 15 U.S.C. § 1117.
10. Whether Defendants' either (1) intentionally used the Coach Marks knowing that they were counterfeit, or (2) were willfully blind to such use.

## EXPERT WITNESSES

Neither Plaintiffs nor Defendants will be calling Expert Witnesses to testify.

# OTHER WITNESSES

**Plaintiff's Witnesses**

1. Ethan Lau, Blakely Law Group, 915 North Citrus Avenue, Los Angeles, CA 90038. Mr. Lau will testify as to the validity and strength of the Coach Marks, as well as Coach's general business practices. Mr. Lau will also testify as to the investigation of Defendants. Mr. Lau is a possible witness.

2. Donald Bambenek, Blakely Law Group, 915 North Citrus Avenue, Los Angeles, CA 90038. Mr. Bambenek will testify as to his investigation of Defendants, and the Disputed Products purchased during said investigation. Mr. Bambenek is a possible witness.

3. Sherl Stocking, FOCAL PLLC, 800 Fifth Avenue, Suite 4100, Seattle, WA 98104. Mr. Stocking will be called to testify as to Defendants purchase and sale of the Disputed Products, the general business operations of Defendants, Mr. Stocking's awareness of the Coach brand at the time of his purchase and sale of the Disputed Products, and Mr. Stocking's awareness of whether or not the Disputed Products bore marks similar to the Coach Marks at the time of his purchase and/or offering for sale of same. Mr. Stocking will testify.

**Defendants' Witnesses**

1. Sherl Stocking, Focal PLLC, 800 Fifth Avenue, Suite 4100, Seattle, WA, 98104. Mr. Stocking will be called to testify as to Defendants purchase and sale of the Disputed Products, the general business operations of Defendants, Mr. Stocking's awareness of the Coach brand at the time of his purchase and sale of the Disputed Products, and Mr. Stocking's awareness of whether or not the Disputed Products bore marks similar to the Coach Marks at the time of his purchase and/or offering for sale of same. Mr. Stocking will testify.

2. Debra Hunt, Focal PLLC, 800 Fifth Avenue, Suite 4100, Seattle, WA, 98104. Ms. Hunt may be called to testify as to the general business operations of

Defendants as well as Mr. Stocking's character. Ms. Hunt is a possible witness.

3. Ethan Lau, Blakely Law Group, 915 North Citrus Avenue, Los Angeles, CA 90038. Mr. Lau may testify as to the validity and strength of the Coach Marks, as well as Coach's general business practices. Mr. Lau may also testify as to the investigation of Defendants. Mr. Lau is a possible witness.

4. Donald Bambenek, Blakely Law Group, 915 North Citrus Avenue, Los Angeles, CA, 90038. Mr. Bambenek may testify as to his investigation of Defendants, and the Disputed Products purchased during said investigation. Mr. Bambenek is a possible witness.

## EXHIBITS

Admissibility and Authenticity are stipulated as to all of the following Exhibits to be used at Trial:

| Plaintiff's Exhibits No. | Description |
| --- | --- |
| 1 | USPTO Registration Documents for the Coach Marks [Coach 00001-00009] |
| 2 | The products purchased and/or observed by Mr. Bambenek and receipts documenting the sale thereof, including but not limited to Coach 000010-000041, and the photographs provided to opposing counsel at the deposition of Mr. Bambenek |
| 3 | Coach's annual reports from 2008 to 2012 [Coach 00124-00642] |
| 4 | Coach catalogs demonstrating the offering for sale of products bearing the Coach Marks [Coach 00643-00921; Coach 01063-01042] |
| 5 | "Best Brands" of 2011 and 2012 Reports [Coach 00922-01041] |
| 6 | Coach Website Printout [Coach 01042-01043] |

| 7  | Coach Press Clippings [Coach 01044-01054] |
|----|---|
| 8  | Investigative Report of Donald Bambenek [Coach 01060-01061] |
| 9  | Declaration of Dayanara Perez [Coach 01062] |
| 10 | Photographs of Authentic Coach Products, including but not limited to Coach 01055-01059. |
| 11 | April 3, 2013 FRCP 30(b)(6) Deposition Transcript of Defendant Pegasus Theater Shops and all exhibits attached thereto. |
| 12 | May 1, 2013 Deposition Transcript of Donald Bambenek and all exhibits attached thereto. |
| 13 | Receipt for purchase of goods (SHS021-027) |
| 14 | Receipts for sales of goods at Pegasus Theater Shop for the eyar 2012 (SHS028-064) |
| 15 | Defendants' financial statements (SHS065-067) |
| 16 | Photos of Pegasus Theater Shops available on Defendants' website www.pastgas-pegasus.com/gallery/ |

## ACTION BY THE COURT

(a) This case is scheduled for trial before a Jury on _____, _____, at _____.

(b) Trial briefs shall be submitted to the court on or before _____.

(c) Jury Instructions requested by either party shall be submitted to the court on or before _____.  Suggested questions or either party to be asked of the jury by the court on voir dire shall be submitted to the court on or before _____.

(d) This order has been approved by the parties as evidence by the signatures of their counsel.  This order shall control the subsequent course of the action unless

1  modified by subsequent order.  This order shall not be amended except by order of the
2  court pursuant to agreement of the parties or to prevent manifest injustice.

4  DATED this _____ day of October, 2013

6  _____
7  United States District Judge

9  FORM APPROVED

/s/Christopher E. Hawk
Christopher E. Hawk, WSBA #43307
Email: chawk@gordonrees.com

GORDON & REES LLP
121 SW Morrison Street, Suite 1575
Portland, OR 97204
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

BLAKELY LAW GROUP
Brent H. Blakely (Pro Hac Vice)
bblakely@blakelylawgroup.com
Michael Marchand (Pro Hac Vice)
mmarchand@blakelylawgroup.com
915 North Citrus Avenue
Los Angeles, CA 90038
Telephone: (323) 464-7400

*Attorneys for Plaintiffs*
*Coach, Inc. and Coach Services, Inc.*

*s/Venkat Balasubramani*
*s/Sean M. McChesney*
Venkat Balasubramani, WSBA #28269
Sean M. McChesney, WSBA #36973
FOCAL PLLC
800 Fifth Avenue, Suite 4100
Seattle, Washington 98104
Tel: (206) 529-4827
Fax: (206) 260-3966
Email: venkat@focallaw.com
Email: sean@focallaw.com

*Attorneys for Defendants Stocking and Hunt Services, Inc. and Sherl Stocking*